## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
                                                   :
OLDCASTLE PRECAST, INC.,                           :
                                                   :
                              Plaintiff,           :          CIVIL ACTION
                                                   :
            v.                                     :
                                                   :          No. 12-6270
VPMC, LTD,                                         :
JOSEPH R. GAMBONE, JR.,                            :
MICHAEL A. GAMBONE,                                :
AUDREY GAMBONE, co-executor of the                 :
ESTATE OF ANTHONY R. GAMBONE,                      :
Sr., MICHAEL A. GAMBONE,                           :
co-executor of the ESTATE OF                       :
ANTHONY R. GAMBONE, SR.,                           :
GEORGE J. FALCONERO, co-executor                   :
of the ESTATE OF ANTHONY                           :
GAMBONE, SR., SANDRA LEE                           :
GAMBONE, co-executor of the ESTATE                 :
OF ANTHONY GAMBONE, SR., and                       :
SHARON ANAPOSIKY, co-executor of                   :
the ESTATE OF ANTHONY                              :
GAMBONE, SR.,                                      :
                                                   :
                              Defendants.          :
_____            :


## <u>MEMORANDUM</u>

**ROBERT F. KELLY, Sr. J.**                                    **MAY 13, 2013**

   Presently before the Court is Defendants, VPMC, Ltd., Joseph R. Gambone, Jr., Michael

A. Gambone, Audrey Gambone, George J. Falconero, Sandra Lee Gambone, and Sharon

Anaposiky's (collectively, "Defendants"), Motion to Dismiss Plaintiff's Amended Complaint,

Plaintiff, Oldcastle Precast, Inc.'s ("Oldcastle"), Response, and Defendants' Reply.  For the

following reasons, Defendants' Motion will be granted in part and denied in part.

I.      BACKGROUND

Oldcastle is a corporation organized under the laws of the State of Washington.  (Am.

Compl. ¶ 1.)  Defendant, VPMC, Ltd. ("VPMC"), is a Pennsylvania corporation with a principal

place of business in East Norriton, Pennsylvania.  (Id. ¶ 2.)  Defendants, Joseph Gambone, Jr.,

and Michael A. Gambone ("Michael Gambone"), are citizens of Pennsylvania, and Michael

Gambone is a co-executor of the Estate of Anthony R. Gambone, Sr. ("Estate of Anthony

Gambone").  (Id. ¶¶ 3-4, 6.)  Defendant, Audrey Gambone, is a citizen of Pennsylvania and co-

executor of the Estate of Anthony Gambone.  (Id. ¶ 5.)  Defendant, George J. Falconero, is a

citizen of Pennsylvania and a co-executor of the Estate of Anthony Gambone.  (Id. ¶ 7.)

Defendants, Sandra Lee Gambone and Sharon Anaposiky, are citizens of Pennsylvania, and a co-

executors of the Estate of John A. Gambone, Sr. ("Estate of John Gambone").  (Id. ¶¶ 8-9.)

Oldcastle avers that in 2005 it owned approximately 20.68 acres of property located in

Bucks County, Pennsylvania (the "Property"), and that on December 9, 2005, it entered into an

agreement of sale (the "Agreement of Sale") with Gambone Acquisition Company ("GAC"),

whereby GAC agreed to pay Oldcastle $2,800,000 ("Purchase Price"), in exchange for title to the

Property.  (Id. ¶¶ 12-13.)  On November 3, 2006, GAC entered into an assignment agreement,

whereby GAC assigned its rights and obligations under the Agreement of Sale to Ridgewood,

Inc. ("Ridgewood").  (Id. ¶ 14.)  Ridgewood paid $1,400,000 in cash to Oldcastle, and borrowed

from Oldcastle the remaining $1,400,000 to purchase the Property.  (Id. ¶ 15.)  On November 3,

2006, Ridgewood executed a mortgage note (the "Note"), that was secured by a mortgage (the

"Mortgage").  (Id. ¶ 16.)  Pursuant to the Note, Ridgewood promised to pay Oldcastle the

principal amount of $1,400,000 (the "Principal"), together with the interest rate of six percent

(6%) through November 3, 2007.  (Id.)  In addition, under the Note, all unpaid principal amounts and other amounts payable under the Note became due on or before November 3, 2007 (the "Maturity Date").  (Id. ¶¶ 17-18.)  On or about November 3, 2006, Gambone Development Company ("GDC") executed a guaranty (the "Guaranty"), whereby GDC guaranteed to Oldcastle, the "full and prompt payment of all sums and charges . . . payable by [Ridgewood], its successors and assigns, under the Loan. "  (collectively, the Note, the Mortgage, and the Guaranty will be referred to as the "Loan Documents").  (Id. ¶ 19; Ex. E.)  The Guaranty contains a confession of judgment provision whereby GDC authorized any court to confess or enter judgment against it for all sums due under the terms of the Note in the event of a default under any of the documents securing Oldcastle's loan to Ridgewood.  (Id. ¶ 20, Ex. E at ¶ 12.)

As of November 3, 2007, the Maturity Date under the Note, Ridgewood had solely made interest-only payments, and had failed to pay any of the Principal to Oldcastle.  (Id. ¶ 21.)  On December 5, 2007, Oldcastle entered into a modification of the Note (the "First Modification Agreement") with Ridgewood, GDC, John A. Gambone, Sr., Anthony R. Gambone, Sr.,[1] and John R. Gambone, Jr. (collectively, the Estate of John Gambone, the Estate of Anthony Gambone, and Joseph R. Gambone, Jr. will be referred to as the "VPMC Principals").  The VPMC Principals were also the Directors of VPMC.  (Id. ¶¶ 22-23; Ex. F.)  Pursuant to the First Modification Agreement, Oldcastle agreed to extend the Maturity Date of the Note until August 3, 2008, and Ridgewood agreed to make monthly payments to Oldcastle in the amount of $14,000, for the period of December 3, 2007, until August 3, 2008.  (Id. ¶ 24.)  Under the First

---

[1]John A. Gambone, Sr. and Anthony R. Gambone, Sr. died on May 9, 2009 and May 12, 2010, respectively.

Modification Agreement, the VPMC Principals represented that they were principals and

directors of VPMC, a company that owned a property known as the Shops at Blue Bell (the

"Shops").  (Id. ¶ 25.)  The VPMC Principals also represented that they believed the sale of the

Shops would generate sufficient funds to pay all amounts owed to Oldcastle under the Loan

Documents on the settlement date of the Shops.  (Id. ¶ 26.)  The First Modification Agreement

states in relevant part:

> The VPMC Principals (i) have a reasonable belief that the [Shops]
> will be sold on or before August 3, 2008, (ii) have a reasonable
> belief that the net proceeds from a sale of the Shops will result in
> sufficient funds to pay [Oldcastle] all amounts that are due and
> owing under the Loan Documents, (iii) will use best efforts to
> cause VPMC to sell the [Shops] on or before August 3, 2008, and
> (iv) hereby covenant and agree that on the settlement date of the
> sale of the [Shops] they will cause sufficient funds to be transferred
> by wire transfer to an account of [Oldcastle] in order to pay to
> [Oldcastle] all amounts that are due and owing under the Loan
> Documents.

(Id.; Ex. G at ¶ 2.3.)

Oldcastle asserts that Michael Gambone is the President of VPMC and, though he did not

sign the First Modification Agreement, he participated in the negotiation of this Agreement, and

he knew that the VPMC Principals had bound VPMC to this financial commitment to Oldcastle.

(Id. ¶¶ 28-31.)  Ridgewood failed to pay the Principal and any other amount due Oldcastle under

the Loan Documents on or before the modified Maturity Date.  (Id. ¶ 32.)

On January 5, 2009, Oldcastle entered into a second modification of the Note with

Ridgewood and GDC (the "Second Modification Agreement").  (Id. ¶ 33; Ex. H.)  Oldcastle

avers that the VPMC Principals were not parties to this Agreement, and this Agreement does not

contain any indication that it displaced or superseded the First Modification Agreement.  (Id.)

Under the Second Modification Agreement, Ridgewood represented that it had entered into an

agreement with the Central Bucks School District to sell the Property for at least $2,500,000, and

that as a result of the sale of the Property, it would receive funds sufficient to pay Oldcastle at

least $772,000, and would be able to repay the additional sum of $328,000 from the proceeds of

a loan it expected to obtain.  (Id. ¶¶ 35-36.)  Ridgewood further promised to pay this combined

sum of $1,100,000 to Oldcastle on or before March 3, 2009, as a repayment of principal under

the Note.  (Id. ¶ 36.)  Furthermore, Oldcastle asserts that Ridgewood and GDC reaffirmed their

obligations under the Loan Documents, including the First Modification Agreement.  (Id.; Ex. G

¶ 1.9.)

On December 23, 2010, VPMC sold the Shops to a third-party for approximately

$22,840,000.  (Id. ¶ 42.)  Oldcastle claims that none of the Defendants notified Oldcastle about

the sale of the Shops, and none of the proceeds from the sale were applied toward the repayment

of Ridgewood's debt owed to Oldcastle.  (Id. ¶ 43.)  Oldcastle maintains that it first discovered

that VPMC had sold the Shops, and had failed to apply any of the proceeds toward the repayment

of Ridgewood's debt owed to it, on or about December 2011.  (Id. ¶ 45.)  Oldcastle states that

"throughout the process of negotiating the First Modification Agreement and thereafter, the

VPMC Principals and Michael A. Gambone acted in their individual capacities, representing,

among other things, that they could, and would, sell the Shops and use the proceeds from the sale

to pay Oldcastle in full in [sic] to satisfy Ridgewood's loan obligations, as required by the First

Modification Agreement."  (Pl.'s Resp. Mot. to Dismiss at 5.)  Oldcastle contends that, at the

time of these representations, the VPMC Principals and Michael Gambone knew or should have

known of the falsity of the representations intending for Oldcastle to rely upon their misrepresentations.  (Id. ¶¶ 5-6.)  Instead, the VPMC Principals and Michael Gambone sold the Shops for their own personal benefit and kept or spent the proceeds of the sale of the Shops for their own benefit.  (Id.)

Oldcastle filed a Complaint against the Defendants on November 6, 2012[2], and an Amended Complaint on January 7, 2013.  (Doc. Nos. 1, 7).  In the Amended Complaint, Oldcastle asserts claims against the VPMC Principals and Michael A. Gambone for fraud (Count I), negligent misrepresentation (Count II), conversion (Count IV), civil conspiracy (Count V), and alter ego/participation (Count VIII).  Oldcastle alleges a claim solely against Michael Gambone for tortious interference with a contractual relationship (Count III).  Oldcastle further avers a claim against VPMC, the VPMC Principals, and Michael Gambone for quantum meruit/unjust enrichment (Count VII), and claims solely against the VPMC Principals for breach of contract of the First Modification Agreement (Count VI), and promissory estoppel (Count IX). Defendants filed the instant Motion to Dismiss on January 24, 2013.  Oldcastle filed a Response on February 21, 2012, and Defendants filed a Reply on March 15, 2013.  (Doc. Nos. 9, 12-13).

Defendants assert in their Motion to Dismiss that Oldcastle's claims both in tort and contract are barred by the applicable statutes of limitations.  Defendants further maintain that even if Oldcastle's claims are not time-barred, the relationship between Oldcastle and Defendants is governed exclusively by a contract, and Oldcastle is "seeking only economic damages based

---

[2]Oldcastle sued Ridgewood and GDC in the initial Complaint.  However, Oldcastle dismissed both of these Defendants in its Amended Complaint.  Defendants assert that Ridgewood and GDC are indispensable parties, mandating dismissal under Rule 12(b)(7) of the Federal Rules of Civil Procedure. (Defs' Mot. to Dismiss at 1, n.1.)  This argument will be discussed, infra.

on the alleged failure to perform under the contract," and because of such, Oldcastle's tort claims are barred by the gist of the action and economic loss doctrines.  (Defs.' Mot. to Dismiss at 2.) Defendants also assert several additional arguments seeking to dismiss a number of causes of action and several, if not all, Defendants from this action.  We will address each argument in turn.

## II.    STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  Under Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. CIV. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atl. Corp. v. Twombly, the Supreme Court stated that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  550 U.S. 544, 555 (2007).  Following Twombly, the Third Circuit has explained that the factual allegations in the complaint may not be "so undeveloped that it does not provide a defendant the type of notice which is contemplated by Rule 8."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  Moreover, "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'"  Id. (alteration in original) (quoting Twombly, 550 U.S. at 563 n.8).  Furthermore, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level."  Id. at 234 (quoting Twombly, 550 U.S. at 555).  "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation

that discovery will reveal evidence of the necessary element.'" Id. (quoting Twombly, 550 U.S. at 556).

Notwithstanding Twombly, the basic tenets of the Rule 12(b)(6) have not changed. The Knit With v. Knitting Fever, Inc., No. 08-4221, 2009 U.S. Dist. LEXIS 30230, at *6 (E.D. Pa. Apr. 8, 2009). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief, not detailed factual allegations. Phillips, 515 F.3d at 231. Moreover, when evaluating a motion to dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and must view any reasonable inferences that may be drawn therefrom in the light most favorable to the plaintiff. Id.; Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III.    DISCUSSION

### 1. Statutes of Limitations

Defendants first assert that to the extent that Oldcastle ever possessed any claims based on VPMC's failure to sell the Shops under the First Modification Agreement, those claims accrued no later than August 3, 2008, when the Shops were not sold. Defendants argue that because Oldcastle waited more than four years to commence this action, and the longest statute of limitations available to Oldcastle is four years, the Amended Complaint must be dismissed.[3]

---

[3]Under Pennsylvania law, actions to recover damages for injury to person or property which sound in fraud are governed by a two-year statute of limitations. 42 Pa. C.S. § 5524(7); Toy v. Metro. Life Ins. Co., 863 A.2d 1, 7 (Pa. Super. 2004). Conversion claims are governed by a two-year statute of limitations, 42 Pa.C.S.C. § 5524, while unjust enrichment claims are afforded a four-year statute of limitations. Sevast v. Kakouras, 915 A.2d 1147, 1153 (Pa. 2007).

(Defs.' Mot. to Dismiss at 8-9.)

Defendants state that "accepting Oldcastle's allegations as true, all of its claims accrued no later than August 3, 2008 when VPMC did not sell the Shops and the VPMC Principals did not pay Oldcastle pursuant to the First Modification."  (Id. at 9.)  Accordingly, Defendants argue that Oldcastle "knew on August 3, 2008 - when it did not receive any money - that the VPMC Principals' 'reasonable belief' and 'best efforts' [had] not come to fruition," and that if Oldcastle suffered any injury, it occurred on August 3, 2008, when the Note was not paid off.  (Id.)

In response, Oldcastle first argues that "in the Third Circuit, limitations defenses must be presented as an affirmative defense in an answer and not in a motion to dismiss unless 'the time alleged in the statement of claim shows that the cause of action has not been brought within the statute of limitations.'"  Thomas v. Care Plus of New Jersey, Inc., 484 F. App'x 692, 693 (3d Cir. 2012).  The Thomas Court held that "[w]e may therefore affirm on the basis of a limitations dismissal when the defect is apparent from the face of the complaint."  Id.  Oldcastle asserts that from the "face of the Amended Complaint, which alleges that it first discovered the injury in question in or about December 2011, [it] commenced this litigation within all applicable statute of limitations."  (Pl.'s Resp. Mot. to Dismiss at 7.)  We are not of the opinion that the "defect is apparent from the face of the complaint."  See Thomas, 484 F. App'x at 693.  While Oldcastle alleges that it discovered its injury in December 2011, there is certainly a question raised by its Amended Complaint whether it should have discovered any injury prior to this date.  We, thus, find that the Defendants properly raised a statute of limitations defense in its Motion to Dismiss, and proceed to discuss the merits of this issue.

Oldcastle asserts that it filed each of its claims within the applicable statutes of

limitations because the claims did not accrue until December 2011, when it first discovered that VPMC had sold the Shops and failed to apply the proceeds toward the repayment of the loan, as required under the First Modification Agreement.  Oldcastle argues that "[t]he true test in determining when a cause of action arises or accrues is to establish the time when the plaintiff could have first maintained the action to a successful conclusion."  Kapil v. Association of Pennsylvania State College and University Faculties, 470 A.2d 482, 485 (Pa. 1983), (quoting Argust v. Dick Mackey General Contracting Co., Inc., 568 A.2d 255, 257 (Pa. Super. 1990)).  "Thus, the date that starts the computation of time for the running of the limitation period is the date when the cause of action arises as determined by the occurrence of the final significant event necessary to make the claim suable."  Mack Trucks, Inc., v. Bendix-Westinghouse Automotive Air Brake Co., 372 F.2d 18, 20 (3d. Cir. 1966); see also Ross v. Johns-Manville Corp., 766 F.2d 823, 826 (3d. Cir. 1985).

Oldcastle maintains that the event triggering its ability to be able to assert its various causes of action against Defendants was the sale and settlement of the Shops, and subsequent failure by the VPMC Principals to use the proceeds to pay off the Loan as required in the First Modification Agreement.  (Pl.'s Resp. Mot. to Dismiss at 8.)  Oldcastle argues that if it had sued Defendants immediately after August 3, 2008, its claims would not have been ripe because VPMC had not yet sold the Shops, and the VPMC Principals had not yet breached the First Modification Agreement by failing to use the proceeds to pay off the Loan, and thus, it had not yet sustained any damage.  Oldcastle asserts in its Amended Complaint that VPMC sold the Shops to a third-party on December 23, 2010, but first discovered that VPMC had sold the Shops and failed to apply any of the proceeds toward the repayment of Ridgewood's debt owed to it in

10

December 2011.  (Am. Compl. ¶¶ 42, 45.)

The question of whether a statute of limitations has run is usually a question for the trial judge, but where the issue involves a factual determination, the determination is for the jury. Farm Credit Leasing Serv. Corp. v. Ferguson Packaging Machinery, Inc., No. 07-1900, 2007 WL 4276841, at *4 (E.D. Pa. Dec. 3, 2007) (quoting Caleb v. CRST, Inc., 43 F. App'x 513, 516 (3d Cir. 2002)).  "Specifically, 'the point at which the complaining party should reasonably be aware that he has suffered an injury is generally an issue of fact to be determined by the jury; only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law.'" Id. (quoting Caleb, 43 F. App'x at 516).

Here, it is apparent on the face of the First Modification Agreement itself that Oldcastle's alleged injuries did not occur on August 3, 2008, for statute of limitation purposes.  As noted, the First Modification Agreement states that the VPMC Principals "have a reasonable belief that the [Shops] will be sold on or before August 3, 2008," and  "will use best efforts to cause VPMC to sell the [Shops] on or before August 3, 2008."  (Am. Compl.; Ex. G ¶2.3.)  It does not state that the VPMC Principals were obligated to sell the Shops by that date.  It follows that if the VPMC Principals were not contractually bound to sell the Shops by August 3, 2008, then Oldcastle could not have suffered harm when that date came and the Shops were not sold.[4]  Thus, we find that this date was not the earliest date that Oldcastle could have discovered its injury.  The next most reasonable date on this record that Oldcastle could have suffered injury is when the Shops were actually sold on December 23, 2010.  Using this date as the earliest time giving rise to

---

[4]Of course, the main issue in this case is whether the VPMC Principals violated the First Modification Agreement when it did sell the Shops in December 2010, and failed to use the proceeds to pay-off the Loan.

Oldcastle's causes of action, it is evident that all of Oldcastle's causes of action were filed prior to the expiration of the applicable statutes of limitations because the initial Complaint was filed on November 6, 2012, which is less than two years after the statutes began to run (December 23, 2010).  Accordingly, Defendants' Motion to Dismiss on statute of limitations grounds is without merit.

**2.  Oldcastle's Tort Claims Against Michael Gambone and the VPMC Principals**

**A.  Gist of the Action Doctrine**

Defendants next argue that Oldcastle's claims "arise solely from the fully integrated First Modification," and that Oldcastle "does not plead any duties that are not specifically set forth in the First Modification."  (Defs.' Mot. to Dismiss at 12.)  Defendants assert that because Oldcastle's claims arise solely from its expectations in connection with the First Modification Agreement, Oldcastle's tort claims are barred under the "Gist of the Action Doctrine."  (Id.)

The gist of the action doctrine bars tort claims under the following circumstances: (1) where the claim arises solely from a contract between the parties; (2) where the duties allegedly breached were created by a contract; (3) where liability is derived from a contract; or (4) where the success of the tort claim is dependent on the terms of a contract.[5]  Pittsburgh Constr. Co. v. Griffith, 834 A.2d 572, 582 (Pa. Super. 2003).  In eToll, Inc. v. Elias/Savion Advert, Inc., the Court in applying the gist of the action doctrine stated that a  "claim should be limited to a

---

[5]"The Pennsylvania Supreme Court has not expressly adopted the gist of the action doctrine," though "both the United States Court of Appeals for the Third Circuit and the Pennsylvania Superior Court have predicted it would do so."  Vives v. Rodriguez, 849 F. Supp. 2d 507, 516 (E.D. Pa. 2012), (quoting PPG Indus., Inc. v. Generon IGS, Inc., 760 F. Supp. 2d 520, 527 n.1 (W.D. Pa. 2011)).

contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts."  811 A.2d 10, 14 (Pa. Super. 2002) (quoting Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 104 (3d Cir. 2001)).

Oldcastle responds that as a threshold issue, the gist of the action doctrine does not apply to any of its tort claims against Michael Gambone because he was not a party to the First Modification Agreement.  See Centimark Corp. v. Pegnato & Pegnato Roof Management, Inc., No. 05-708, 2008 WL 1995305, at *13 (E.D. Pa. May 6, 2008); Levert v. Philadelphia Int'l Records, No. 04-1489, 2005 WL 2271862, at *3 (E.D. Pa. Sept. 16, 2005).  In Centimark, the Court determined that the defendants were unable to invoke the gist of the action doctrine to foreclose litigation of the conversion claim against them individually because they, as individuals, were not parties to the contract.  Centimark Corp., 2008 WL 1995305, at *13.  In Levert, the Court found that the gist of the action doctrine did not apply to the defendant because he was not a party to any contract and there was no agreement between the parties.  Levert, 2005 WL 2271862, at *3.

However, in Williams v. Hilton Group, PLC, the United States Court of Appeals for the Third Circuit (the "Third Circuit") looked at the overall relationship of the parties and their involvement in the contract at issue in concluding that the gist of the action doctrine did bar a tort claim against a defendant even though that defendant was not a signatory to the contract. Williams, 93 F. App'x 384, 385 (3d Cir. 2004).  The Third Circuit stated:

> [W]e hold that the District Court did not err in concluding that the doctrine
> barred Williams' claims against Ross, as well as his claims against
> Ladbrokes.  Although Williams did not have a contractual relationship
> with Ross, Williams cannot detach Ross from his status as an agent for
> Ladbrokes. Ross served as the principal negotiator for Ladbrokes. As the

13

> Pennsylvania courts have spelled out, the gist of the action doctrine bars
> tort claims against an individual defendant where the contract between the
> plaintiff and the officer's company created the duties that the individual
> allegedly breached.

Id. at 384. Integrated Waste Solutions, Inc. v. Goverdhanam followed the Circuit's lead and also

looked at the relationship between the parties in determining that the gist of the action doctrine

barred a tort claim against the defendant despite the fact that he was not a party to the contract at

issue. Integrated Waste Solutions, No. 10-2155, 2010 WL 4910176, at *1 (E.D. Pa. Nov. 30,

2010). The Court stated in relevant part:

> Here, Goverdhanam clearly acted as his own company's chief negotiator,
> and his misrepresentations were based on his intent (or lack thereof) to
> comply with, or have his company comply with, the terms of the
> Confidentiality Agreement and subsequent service contract. . . . Given
> that the alleged contracts between the parties governed the subject matter
> of Defendant Goverdhanam's purported misrepresentations,
> Goverdhanam's lack of contractual relationship with Plaintiff does not
> preclude the Court's application of the gist of the action doctrine.

Id. at 12.

Here, we follow the rational of Williams and Integrated and will not preclude the

application of the gist of the action doctrine regarding Oldcastle's tort claims against Michael

Gambone solely because he is not a signatory to the First Modification Agreement. Rather, we

will look to Gambone's relationship to VPMC and his involvement in the consummation of this

agreement. Oldcastle asserts that Gambone is President of VPMC and that he "knew that the

VPMC Principals had bound VPMC to this financial commitment to Oldcastle by way of the

First Modification Agreement, and, upon information and belief, participated in the negotiation

of the First Modification Agreement." (Am. Comp. ¶¶ 28-29.) In its fraud and negligent

misrepresentation claims, Oldcastle avers that "upon information and belief" the VPMC

Principals and Michael Gambone knew of the falsity of the representations made to Oldcastle

and intended it to rely on such.  (Id. ¶¶ 51-52, 64-65.)  In its tortious interference with a

contractual relationship claim, Oldcastle alleges that Michael Gambone counseled and/or

directed the VPMC Principals to breach their obligations under the First Modification

Agreement.  (Id. ¶ 74.)

It is apparent from the above allegations that, at this stage of the litigation, all we know

about Michael Gambone is what Oldcastle has averred about him in its Amended Complaint.

Because the current record before us is devoid of any other information concerning Michael

Gambone's involvement in the First Modification Agreement, we believe that the issue of

whether the gist of the action doctrine bars tort claims against him is premature.  If, after the

discovery period ends, Defendants wish to raise this issue again, they certainly have the option of

doing so in a summary judgment motion.  Accordingly, at this time, we deny Defendants' Motion

to Dismiss the tort claims against Michael Gambone based on the gist of the action doctrine.[6]

We next address the issue of whether the gist of the action doctrine bars Oldcastle's tort

claims against the VPMC Principals.[7]  Oldcastle asserts that Pennsylvania courts have applied the

gist of the action doctrine to claims for fraud in the performance of a contract, but not to claims

for fraud in the inducement of a contract, and that its fraud claim against Defendants is in the

---

[6]However, as will be discussed, infra, Oldcastle's tort claims of conversion and civil conspiracy against Michael Gambone will be dismissed on other grounds.  In addition, we also discuss, infra, the issue of suing Michael Gambone in his individual capacity and not as president of VPMC.

[7]Oldcastle "concedes that it is in agreement with Defendants' analysis that Oldcastle's conversion claim against the VPMC Principals only is barred by the Gist of the Action Doctrine."  (Pl.'s Resp. Mot. to Dismiss at 14, n.9.)  Accordingly, we dismiss this claim.

inducement.  See Digital Encoding Factory, LLC v. Iron Mountain Info. Mgmt, Inc., 660 F.

Supp. 2d 608, 622 (W.D. Pa. 2009) (citing Sullivan v. Chartwell Investment Partners, LP, 873

A.2d 710, 719 (Pa. Super. 2005)); see also Mirizio v. Joseph, 4 A.3d 1073, 1085 (Pa. Super.

2010) (finding that the defendant's "actions constituted fraud in the inducement, and therefore,

the claim for fraud and misrepresentation was not barred by the gist of the action doctrine").

Defendants again cite Williams in asserting that the Third Circuit determined that a fraud

in the inducement claim is also barred by the gist of the action doctrine.  93 F. App'x at 385.

Oldcastle responds that in Williams, the Third Circuit only predicted that the Pennsylvania

Supreme Court would extend the gist of the action doctrine to claims for fraudulent inducement,

and that this prediction was rejected by a district court decision in the Western District of

Pennsylvania.  See Digital Encoding Factory, LLC, 660 F. Supp. 2d at 622.  (Pl.'s Resp. Mot. to

Dismiss at 11.)

The court in Digital stated:

> In Williams v. Hilton Group PLC, 93 F. App'x 384 (3d Cir.2004) ( per
> curiam), the Third Circuit affirmed dismissal under the gist of the action
> doctrine of fraud claims involving breach of an exclusive negotiation
> agreement despite evidence that the defendant never intended to honor its
> promise of exclusivity. However, the Williams Court did not have the
> benefit of the Superior Court's subsequent decision in Sullivan,[8] which
> permitted a claim for fraud in the inducement predicated upon the same
> promises that it found to be sufficient to make out a contract claim.

Id. at 623.

Defendants acknowledge that there is a split in authority between the Third Circuit and

---

[8] Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 719 (Pa. Super. Ct. 2005) ("[S]ince
Appellant's tort claims relate to the inducement to contract, they are collateral to the performance of the
contracts and therefore, are not barred by the gist-of-the action doctrine.").

the Pennsylvania Superior Court over whether fraudulent inducement claims predicated upon misrepresentations as to a party's intent to perform under a contract are barred by the gist of the action doctrine.  Defendants urge us to adopt Judge Stewart Dalzell's rationale in Vives, 849 F. Supp. 2d at 520-21.  Vives comprehensively summarized the evolution of this issue in the Pennsylvania Superior Court and the Third Circuit.  Id.

Vives recognized that the Third Circuit and the Pennsylvania Superior Court have not offered a unified approach to applying the gist of the action doctrine to claims of fraud, and that the Superior Court has drawn a categorical distinction between claims of fraud in the performance of a contract and fraud in the inducement, noting that the gist of the action doctrine should apply to the former, but not the later.  Id.; see Sullivan, 873 A.2d at 719; Brickman Grp., Ltd. v. CGU Ins. Co., 865 A.2d 918, 928 (Pa. Super. 2004) (agreeing with plaintiff's argument that "the law appears to permit fraud in the inducement claims in disputes involving contractual obligations, notwithstanding that the gist of the action doctrine would bar claims of fraudulent (non)performance."); see also Mirizio, 4 A.3d at 1087.

District courts in the Third Circuit, however, have interpreted the doctrine "to call for a fact-intensive judgment as to the true nature of a claim," and concluded that the gist of the action doctrine may apply to bar both claims related to fraudulent performance and claims related to fraudulent inducement where the false representation concerned duties later enshrined in the contract.  Williams, 93 F. App'x at 385; Vives, 849 F. Supp. 2d at 520-21; see also Integrated, 2010 WL 4910176, at *11 ("In other words, if the duties in question are intertwined with contractual obligations, the claim sounds in contract, but if the duties are collateral to the contract, the claim sounds in tort.").  Vives, in addressing this "quandary," determined that "[w]e

17

ultimately side with the authority from our Circuit, and predict that the Pennsylvania Supreme Court would find fraudulent inducement claims predicated upon misrepresentations as to a party's intent to perform under a contract to be barred by the gist of the action doctrine." 849 F. Supp. 2d at 520. Vives noted that the Third Circuit had recently reemphasized the importance of this fact-intensive analysis in Pediatrix Screening, Inc. v. TeleChem Int'l, Inc., 602 F.3d 541, 550 (3d Cir. 2010). (Id.) In Pediatrix, the Third Circuit determined that the gist of the action test "requires the court to focus on the substance of the dispute, or, more colloquially, to ask the question, 'What's this case really about?' The doctrine deals less with specific enumerated 'duties' than with the parties' conduct as it relates to the contract and the tort alleged." Id. at 550; see also Mendelsohn, Drucker & Assoc.'s v. Titan Atlas Mfg., Inc., 885 F. Supp. 2d 767, 788 (E.D. Pa. 2012).

Here, like Vives, we also side with the authority in our Circuit, and predict that the Pennsylvania Supreme Court would find fraudulent inducement claims predicated upon misrepresentations as to a party's intent to perform under a contract to be barred by the gist of the action doctrine. In doing so, we follow the rationale set forth in eToll, Inc. v. Elias/Savion Advert., Inc., where the Pennsylvania Superior Court, applying the gist of the action doctrine, stated that a "claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts." 811 A.2d at 14. We also follow the rationale of Williams which calls for a "fact-intensive judgment as to the true nature of a claim," 93 F. App'x at 385, and Pediatrix which "requires the court to focus on the substance of the dispute, or, more colloquially, to ask the question, 'What's this case really about?'" 602 F.3d at 550.

18

Applying these rationales to the instant case, we are of the opinion that it is clear that Oldcastle's tort claims against the VPMC Principals all stem from the First Modification Agreement and the duties of the parties under that agreement.  As the First Modification Agreement indicates, the obligations and "true nature" of Oldcastle's tort claims against the VPMC Principals are found solely in this agreement.  This Court acknowledges that it must exercise caution in making a determination regarding the gist of the action doctrine at this early stage of the case.  See, e.g., Integrated, 2010 WL 4910176, at *11; Weber Display & Packaging v. Providence Wash. Ins. Co., No. 02–7792, 2003 WL 329141, at *4 (E.D. Pa. Feb.10, 2003).  We find, however, that Oldcastle's claims of fraud, negligent misrepresentation, and civil conspiracy are derived from duties Oldcastle and the VPMC Principals specifically outlined in the First Modification Agreement. Thus, these claims merely duplicate Oldcastle's breach of contract claims, and therefore, are barred by the gist of the action doctrine.

### B.  Economic Loss Doctrine

Defendants also assert that the "Economic Loss Doctrine" prohibits Oldcastle from "recovering in tort economic losses to which their entitlement flows only from a contract." (Defs.' Mot. to Dismiss at 19.)  In general, the economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995).  "The rationale of the economic loss rule is that tort law is not intended to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement." Palco Linings, Inc. v. Pavex, Inc., 755 F. Supp. 1269, 1271 (M.D. Pa. 1990).

19

However, there is a split among courts in Pennsylvania and the federal district courts as to whether the economic loss doctrine applies to intentional fraud claims. <u>KNK Medical-Dental Specialities, Ltd. v. Tamex Corp.</u>, No. 99-3409, 2000 WL 1470665, at *5 (E.D. Pa. Sept. 28, 2000); <u>see also</u> <u>Blue Mountain Mushroom Co., Inc. v. Monterey Mushroom, Inc.</u>, 246 F .Supp. 2d 394, 403 (E.D. Pa. 2002); *Compare*, <u>Worldwideweb Networx Corp. v. Entrade, Inc.</u>, No. 3839, 2002 WL 1472336, at *3 (Pa. Com. Pl. June 20, 2002) ("[T]he economic loss doctrine does not apply to intentional tort claims.") *with* <u>Sunquest Information Systems, Inc. v. Dean Witter</u>, 40 F. Supp. 2d 644, 651 (W.D. Pa. 1999) ("[A] plaintiff cannot assert a fraud or negligent misrepresentation claim when that theory is 'merely another way of stating its breach of contract claim,' . . . or when its success 'would be wholly dependent upon the terms of the contracts.'"); <u>Montgomery Cty. v. Microvote Corp.</u>, No. 97-6331, 2000 WL 134708, at *7 (E.D. Pa. Feb.3, 2000) (economic loss rule bars recovery for both negligent and intentional misrepresentation).

However, we decline to decide whether the economic loss doctrine bars Oldcastle's tort claims against the VPMC Principals in the present action because we have already determined that such claims are barred by the gist of the action doctrine.  In addition, we will not dismiss Oldcastle's tort claims against Michael Gambone at this time based on the economic loss doctrine for the same reasons that we did not bar these claims under the gist of the action doctrine; namely, that the issue is premature.

### C.  Parol Evidence Rule

In its Reply to Oldcastle's Response to its Motion to Dismiss, Defendants assert that, independent of the gist of the action doctrine, Oldcastle's admission that this case concerns only

"pre-contractual representations" requires dismissal of all tort claims.  (Defs.' Reply at 1.)

Defendants maintain that in an effort to avoid dismissal of its tort claims pursuant to the gist of

the action doctrine, Plaintiff admits that its claims for fraud and negligent misrepresentation are

"inducement" claims.  Oldcastle states in its Response that "the pre-contractual representations

of the VPMC Principals and Michael Gambone induced Oldcastle to enter into the First

Modification Agreement."  (Pl.'s Resp. Mot. to Dismiss at 13.)  Defendants argue that under

Pennsylvania law, an integration clause in a commercial agreement among the parties bars a

party from claiming reliance upon alleged pre-contractual representations.  (Defs.' Reply at 1.)

The November 3, 2008 Mortgage Note includes the following:

> Integration Clause.  This Note and other Loan Documents are
> intended by the parties as the final, complete and exclusive
> statement of the transactions evidence by this Note and the other
> Loan Documents.  All prior or contemporaneous promises,
> agreements and understandings, whether oral or written, are
> deemed to be superceded by this Note and the other Loan
> Documents, and no party is relying on any other promise,
> agreement or understanding not set forth in this Note and the other
> Loan Documents.  This Note and the other Loan Documents shall
> be construed as one agreement and shall be interpreted as
> complementary to each other; provided, that in the event of any
> inconsistency, the provisions of this Note shall supersede and
> control the provisions of the other Loan Documents.  This Note
> may not be amended or modified except by written instrument
> describing such amendment or modification executed by Maker
> and Payee.

(Am. Compl., Ex. C  ¶ 12.)

In addition, the First Modification Agreement specifically incorporates this integration

clause.  It states, "All of the terms, conditions and provisions of the Loan Documents are

21

incorporated herein by reference as fully as though set forth in this Agreement."  (Am. Compl., Ex. E ¶ 4.4.)

Under Pennsylvania law, the parol evidence rule provides that evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is generally inadmissible to explain or vary the terms of a writing that represents the entire contract between the parties.  Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 436-37 (Pa. 2004). Defendants assert that Pennsylvania law applies the fraud exception to the parol evidence only for fraud in the execution of a contract and not in the inducement of a contract.  Indeed, in Toy v. Metro. Life Ins. Co., the Pennsylvania Supreme Court stated:

> [W]hile parol evidence may be introduced based on a party's claim that there was fraud in the execution of a contract, *i.e.,* that a term was fraudulently omitted from the contract, parol evidence may not be admitted based on a claim that there was fraud in the inducement of the contract, *i.e.,* that an opposing party made false representations that induced the complaining party to agree to the contract.

928 A.2d 186, 205 (Pa. 2007) (quoting Yocca, 854 A.2d at 437 n.26); see also Bardwell v. Willis, 100 A.2d 102 (Pa. 1953); Nicolaides v. Bank of America Corp., No. 10-1762, 2012 WL 2864468, at *6 (E.D. Pa. July 12, 2012); Jefferies v. Ameriquest Mortg. Co., 543 F. Supp. 2d 368, 387 (E.D. Pa. 2008).

Here, we agree with Defendants that the parol evidence rule would bar all evidence of any previous oral or written negotiations or agreements involving the same subject matter as the First Modification Agreement and, thus, further supports a dismissal of Oldcastle's tort claims against

the VPMC Principals which include fraud, negligent misrepresentation, and civil conspiracy.[9] However, with regard to Michael Gambone, we once again decline to dismiss the tort claims against him based on the parol evidence rule because, as we have already stated, we believe the issue to be premature at this time.

### D. Conversion Claim Against Michael Gambone

Although, at this time, we will not dismiss Oldcastle's tort claims against Michael Gambone based on the above-discussed doctrines, we, however, will dismiss two of the tort claims, conversion and civil conspiracy, against him on other grounds. Defendants assert that Oldcastle's conversion claim against Michael Gambone fails as a matter of law. We agree. Conversion is the deprivation of another's right of property in, or use of possession of, a chattel, without the owner's consent and without lawful justification. Shonberger v. Oswell, 530 A.2d 112, 114 (Pa. Super. 1987) (citing Stevenson v. Economy Bank of Ambridge, 197 A.2d 721, 726 (Pa. 1964)). Money can be the subject of conversion, but before money can be converted, it must belong to the plaintiff. Montgomery v. Federal Ins. Co., 836 F. Supp. 292, 300 (E.D. Pa. 1993); see also Kia v. Imaging Sciences Intern., Inc., 735 F. Supp. 2d 256, 270 (E.D. Pa. 2010); Shonberger v. Oswell, 530 A.2d 112, 114-15 (Pa. Super. 1987).

Here, Oldcastle's Amended Complaint avers that "[t]he VPMC Principals and Michael A. Gambone have failed to remit proceeds from the sale of the Shops sufficient to pay the full amount due and owing under the Loan Documents," and they "have improperly kept or spent the proceeds of the sale of the Shops for their own benefit." (Am. Compl. ¶¶ 81-82). There is,

---

[9]As noted earlier, Oldcastle conceded in its Response that its conversion claim against the VPMC Principals is barred by the gist of the action doctrine.

however, no evidence in this record, nor has Oldcastle plead, that the money in question first "belonged" to it.  Moreover, the mere failure to pay a debt is not conversion.  Kia, 735 F. Supp. 2d at 270; see also Francis J. Bernhardt, III, P.C. v. Needleman, 705 A.2d 875, 878 (Pa. Super. 1997).  Accordingly, we dismiss Oldcastle's conversion claim against Michael Gambone.

### E.  Civil Conspiracy Against Michael Gambone

Oldcastle's civil conspiracy claim against Michael Gambone must also be dismissed.  To make out a cause of action for civil conspiracy under Pennsylvania law, a plaintiff must establish: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage.  Skipworth by Williams v. Lead Indus. Ass'n, Inc., 690 A.2d 169, 174 (Pa. 1997); see also Kline v. Security Guards, Inc., 386 F.3d 246, 262 (3d Cir. 2004).  As a general rule, "a single entity cannot conspire with itself and, similarly, agents of a single entity cannot conspire among themselves."  Lackner v. Glosser, 892 A.2d 21, 35 (Pa. Super. 2006); see also, Lee v. SEPTA, 418 F. Supp. 2d 675, 681 (E.D. Pa. 2005) ("An employer and its officers and employees acting in the scope of their duties constitute one legal person for purposes of conspiracy law and therefore cannot conspire together.").

Here, Oldcastle's conspiracy claim is against the VPMC Principals and Michael Gambone.  As discussed above, we have already dismissed Oldcastle's civil conspiracy claim against the VPMC Principals based on the gist of the action doctrine.  That leaves before us a conspiracy claim solely against Michael Gambone.  Because Michael Gambone cannot conspire with himself, we dismiss the civil conspiracy claim against him.  See Lackner, 892 A.2d at 35.

24

3.      **Michael Gambone in his Individual Capacity**

Defendants next assert that, not just Oldcastle's tort claims, but all of its claims against

Michael Gambone should be dismissed because he acted at all times as president of VPMC.

Defendants maintain that Oldcastle admits in its Amended Complaint that Michael Gambone's

involvement in this case is "as president of VPMC," and that as "president of VPMC," Michael

Gambone "knew that the VPMC Principals made these promises" in the First Modification

Agreement and "upon information and belief, participated in the negotiation of the First

Modification." (Am. Compl. ¶¶ 28-29.) As such, Defendants assert that the interests of Michael

Gambone as president of VPMC and VPMC, including its Principals, are one in the same. Thus,

there can be no recourse against Michael Gambone, individually, for contract or quasi-contract

claims, such as quantum meruit or any remaining torts, including tortious interference. (Id.)

Defendants state that "the only way a corporate officer can be personally liable is through

the participation theory or through piercing the corporate veil." (Defs.' Mot. to Dismiss at 20.);

see First Realvest, Inc. v. Avery Builders, Inc., 600 A.2d 601, 603 (Pa. Super. 1991). The

Pennsylvania Supreme Court examined the differences between the participation theory and the

doctrine of piercing the corporate veil in Wicks v. Milzoco Builders, Inc., 470 A.2d 86 (Pa.

1983). The Court stated:

> There is a distinction between liability for individual participation in a
> wrongful act and an individual's responsibility for any liability-creating act
> performed behind the veil of a sham corporation. Where the court pierces
> the corporate veil, the owner is liable because the corporation is not a bona
> fide independent entity; therefore its acts are truly his. Under the
> participation theory, the court imposes liability on the individual as an
> actor rather than as an owner. Such liability is not predicated on a finding
> that the corporation is a sham and a mere alter ego of the individual
> corporate officer. Instead, liability attaches where the record establishes

25

the individual's participation in the tortious activity.

Id. at 90.

"Participation theory, in simple terms, is a theory which imposes personal liability on corporate officers or shareholders where they have personally taken part in the actions of the corporation." First Realvest, Inc. v. Avery Builders, Inc., 600 A.2d 601, 604 (Pa. Super. 1991). Piercing the corporate veil is the exception, and courts should start from the general rule that the corporate entity should be upheld unless specific, unusual circumstances call for an exception. Id. In order to pierce the corporate veil in Pennsylvania, courts look at several different factors: (1) whether or not corporate formalities were observed and corporate records were kept; (2) whether other corporate officers and directors existed other than the shareholder; and (3) whether the dominant shareholder has used the assets of the corporation for his own personal use. Village at Camelback Prop. Owners Ass'n, Inc. v. Carr, 538 A.2d 528, 533 (Pa. Super. 1988).

Oldcastle responds that it set forth a number of pleadings in its Amended Complaint averring that Michael Gambone should not be afforded protection through the corporate form because he acted in his individual capacity and not as a representative of VPMC.  Oldcastle adds that it "does not dispute that under Pennsylvania law, a corporate officer is not personally liable when he acts within his corporate capacity.  However, for purposes of this Motion, it has adequately plead Michael Gambone's personal involvement in accordance with Federal Rule of Civil Procedure 8's liberal notice pleading requirements, and it should be entitled to develop these claims by way of discovery."  (Pl.'s Resp. Mot. to Dismiss at 19.)

A review of Oldcastle's Amended Complaint indicates that it does include several

averments where it claims that Michael Gambone acted in his individual capacity. (See e.g. Am. Compl. ¶¶ 48-49, 61-62, 73.) Defendants respond in their Reply that just because Oldcastle uses the phrase "in his individual capacity" it does not mean that it has sufficiently plead a cause of action against Michael Gambone for individual liability. (Defs.' Reply at 11.) We agree that simply using this phrase does not automatically amount to Oldcastle sufficiently pleading causes of action against Michael Gambone in his individual capacity in order to withstand a motion to dismiss. However, just as we declined to dismiss tort claims against Michael Gambone based on the gist of the action doctrine because we believe the issue to be premature, we also find that this issue is premature.

Oldcastle has plead a number of averments stating that Michael Gambone acted in his "individual capacity," however, we simply do not have enough information in the current record concerning his involvement in the First Modification Agreement to make this determination at this time. Thus, we will allow Oldcastle to attempt to develop this issue in discovery, and we decline at this time to address the issue of whether Michael Gambone, as a corporate officer of VPMC, could be personally liable in this action through either the participation theory or through the piercing of the corporate veil. Accordingly, we will not dismiss the claims that remain against Michael Gambone in his individual capacity at this time: negligent misrepresentation (Count II), tortious interference with a contractual relationship (Count III),[10] and alter

---

[10] Since a corporation acts through it agents and officers, such agents and officers cannot be considered third parties when they are acting in their official capacities. See Avins v. Moll, 610 F. Supp. 308, 318 (E.D. Pa. 1984), aff'd, 774 F.2d 1150 (3rd Cir. 1985) (holding that the overwhelming weight of authority is that a corporate officer is not personally liable for tortious interference). The only exception arises if the officer's sole motive in causing the corporation to breach the contract is actual malice toward the plaintiff, or if the officer's conduct is against the corporation's interest. Id.

ego/participation (Count VIII).

**4.     Piercing the Corporate Veil Claim/Alter Ego - VPMC Principals**

Defendants also claim that Oldcastle has failed to state a valid piercing the corporate veil

claim against the VPMC Principals.  Pennsylvania courts recognize that the corporate veil may

be pierced "whenever it is necessary to avoid injustice."  Rinck v. Rinck, 526 A.2d 1221, 1223

(Pa. Super. Ct. 1987).  Nevertheless, "there is a strong presumption in Pennsylvania against

piercing the corporate veil."  Lumax Indus. v. Aultman, 669 A.2d 893, 895 (Pa. 1995).

Although there is no definitive test for piercing the corporate veil pursuant to

Pennsylvania law, courts routinely apply a totality-of-the-circumstances test when determining

whether to impose individual liability on shareholders, officers, and directors of the company at

issue.  Partners Coffee Co., LLC v. Ocean Servs. and Prods. Co., No. 09-236, 2010 WL 1177436,

at *12 (E.D. Pa. Mar. 25, 2010) (citing Plastipak v. Packaging, Inc. v. DePasquale, 75 F. App'x

86, 87-89 (3d Cir. 2003)).

> The Third Circuit has held that the factors to be considered under
> Pennsylvania law with respect to the alter-ego theory include, but
> are not limited to: failure to observe corporate formalities;
> nonpayment of dividends; insolvency of the debtor corporation;
> siphoning funds from the corporation by dominant shareholders;
> nonfunctioning of other officers and directors; absence of corporate
> records; whether the corporation is a mere facade for the operations
> of a common shareholder or shareholders; and gross
> undercapitalization.

First United Bank & Trust v. PNC Fin. Servs. Group, Inc., 667 F. Supp. 2d 443, 458 (M.D. Pa.

2009) (citing E. Minerals & Chems. Co. v. Mahan, 225 F.3d 330, 333 n.7 (3d Cir. 2000)).

Defendants argue that Oldcastle has failed to state any averments in its Amended

28

Complaint as to any of these factors.  Defendants maintain that Oldcastle has simply listed a series of allegations that Michael Gambone and the VPMC Principals "used Ridgewood, GDC, VPMC and related entities as alter egos of one another," in hopes that it could withstand a motion to dismiss.  (Am. Compl. ¶ 113.)  Oldcastle responds that "[m]ost, if not all, of the facts to be pled to establish Oldcastle's cause of action for alter ego/participation against the VPMC Principals and Michael A. Gambone are uniquely in the control of Defendants."  (Pl.'s Resp. Mot. to Dismiss at 23.)  Oldcastle further states that in order to establish whether the VPMC Principals and Michael Gambone maintain control over and/or have a controlling interest in Ridgewood, GDC, and VPMC, it will need to obtain various corporate ownership documents that are uniquely in the possession of some of the Defendants, especially since Ridgewood, GDC, and VPMC are privately held companies.  (Id.)

        As noted earlier, Twombly stated that "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level."  550 U.S. at 555.  However, Twombly also held that this "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.  Id. at 556.  At this stage of the litigation we agree that Oldcastle has plead factual allegations that raise a "reasonable expectation that discovery will reveal evidence" of the necessary elements of an alter ego claim against the VPMC Principals. Like several other of Defendants' arguments, Defendants may choose to again raise this issue in a future motion after discovery.  Accordingly, Defendants' request to dismiss the alter ego claim against the VPMC Principals is denied.

5.      **Quantum Meruit/Unjust Enrichment Claims**

Defendants next assert that Oldcastle's claims for unjust enrichment or quantum meruit against VPMC, the VPMC Principals, and Michael A. Gambone should be dismissed because Oldcastle has not plead that any Defendant benefitted from the Note between Oldcastle and Ridgewood.  Defendants argue that Oldcastle never actually gave anyone any loan proceeds, but rather, it took back the Note for half of the purchase price of the Property it sold to Ridgewood, and that no one was enriched.  (Defs.'s Mot. to Dismiss at 30.)

Under Pennsylvania law, to set forth a claim for unjust enrichment, a party must allege: (1) the moving party conferred a benefit on the defendant party; (2) the defendant realized that benefit; and (3) the defendant accepted and retained the benefit under circumstances in which it would be inequitable to retain the benefit without payment of value.  Farm Credit Leasing Serv.'s Corp. v. Ferguson Packaging Mach., Inc., No. 07-1900, 2007 WL 4276841, at *9 (E.D. Pa. Dec. 3, 2007); Limbach Co., LLC v. City of Phila., 905 A.2d 567, 575 (Pa. Cmwlth. 2006).  It is well settled under Pennsylvania law that a cause of action for unjust enrichment is not proper where there is an express or written contract.  See Diener Brick Co. v. Mastro Masonry Contractor, 885 A.2d 1034, 1039 (Pa. Super. 2005); Villoresi v. Femminella, 856 A.2d 78, 84 (Pa. Super. 2004); Mitchell v. Moore, 729 A.2d 1200 (Pa. Super. 1999).  "Where an express contract already exists to define the parameters of the parties' respective duties, the parties may avail themselves of contract remedies."  Villoresi, 856 A.2d at 84.  Unjust enrichment exists as an equitable remedy for situations where "no real promises and none of the other elements of a real contract is present."  Diener Brick, 885 A.2d at 1039.

30

Here, we first note that there is a contract in the form of the First Modification Agreement between Oldcastle and the VPMC Principals and, thus, an unjust enrichment claim against the VPMC Principals should be dismissed because Oldcastle must seek contract remedies against them which it already has in its Amended Complaint.  Next, regarding the unjust enrichment claim against VPMC, we are of the opinion that any claim against VPMC would also be governed by the First Modification Agreement since the VPMC Principals are parties to that contract.  Accordingly, we dismiss this claim against VPMC as well.  However, we will not dismiss an unjust enrichment claim against Michael Gambone at this time.  As discussed earlier, the current record is lacking in facts regarding Michael Gambone's involvement in the First Modification Agreement.[11]

## 6.      The Executor Defendants

Defendants next assert that "[a]ny continuing 'best efforts' obligation imposed upon Anthony R. Gambone, Sr. and/or John A. Gambone, Sr. (And *ergo* their respective Estates) under the personal services provision of the First Modification Agreement ceased at the time of

---

[11]In their Motion to Dismiss, Defendants do not specifically argue that Oldcastle's claim of promissory estoppel against the VPMC Principals (Count IX) should be dismissed for failure to state a claim.  They only mention that it should be dismissed on statute of limitation grounds which we denied.

The doctrine of promissory estoppel permits a claimant to enforce a promise in the absence of consideration.  Shoemaker v. Commonwealth Bank, 700 A.2d 1003 (Pa. Super. 1997).  To maintain a promissory estoppel action a plaintiff must aver the following elements: "(1) the promisor made a promise that [it] should have reasonably expected would induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise."  Id. at 1006; see also Crouse v. Cyclops Industries, 745 A.2d 606, 611 (Pa. 2000).

In order to maintain a promissory estoppel claim against the VPMC Principals, Oldcastle would have to establish these elements.  Because Defendants do not argue for its dismissal on the merits, we will not dismiss this claim at this stage of the proceedings.

their respective deaths," and consequently, the executors of their estates should be dismissed from this action.[12]  (Defs.' Mot. to Dismiss at 30-31.)

Defendants maintain that "the general rule is 'a contract of employment for personal services is terminated by the death of the servant, or where by reason of insanity, sickness or other disability, or conviction of a felony he is unable to perform his contract, unless the parties have contracted to the contrary.'"  Powell v. Retirement Bd. of Allegheny Cnty., 246 A.2d 110, 113 (Pa. 1968) (quoting cite).  Defendants argue that the First Modification Agreement is a "best efforts" contract and "is naturally a personal services contract at its core, given that a best efforts obligation has the element of diligence at its essence and requires the obligee to use all reasonable methods to achieve the objective going beyond the usual duty of good faith."  (Defs.' Mot. to Dismiss at 31); see National Data Payment Systems, Inc. v. Meridian Bank, 212 F.3d 849, 854 (3d. Cir. 2000).  Defendants assert that the First Modification Agreement was a personal services agreement with Anthony Gambone, Sr., John Gambone, Sr., and Joseph Gambone, Jr., jointly and collectively as the VPMC Principals, and that this Agreement "came to fruition only because all the directors of VPMC were agreeable to use their best efforts to perform the tasks imposed." (Defs.' Mot. to Dismiss at 31.)  They further state that "[c]ollectively, the VPMC Principals were all directors of VPMC and, collectively, they had the unique ability and power to personally direct VPMC how to disburse net proceeds if the property known as the Shops had sold," and that no single Director of VPMC had the ability to direct VPMC to do anything.  (Id.)  Defendants add "[t]hat there was neither a provision in the First

---

[12]As noted earlier, the co- executors of the Estate of Anthony Gambone are Michael Gambone, Audrey Gambone, and George J. Falconero.  (Am. Compl. ¶¶ 4-7.)  Sandra Lee Gambone and Sharon Anaposiky are co-executors of the Estate of John Gambone.  (Id. ¶¶ 8-9.)

Modification Agreement allowing for the best efforts obligation upon the VPMC Principals to be assigned or transferred, nor a provision binding such obligations upon the VPMC Principals' successors only reinforces that the First Modification Agreement was a personal services contract that terminated as to John A. Gambone, Sr. and Anthony R. Gambone, Sr. at the time of their deaths."  (Id. at 31-32.)

Oldcastle responds that it is general contract law in Pennsylvania that "contracts made during a decedent's lifetime are not dissolved by death unless they involve peculiar skills or are based on distinctly personal considerations."  Ress v. Barent, 548 A.2d 1259, 1262 (Pa. Super. 1988); see also Unit Vending Corp. v. Lacas, 190 A.2d 298, 300 (Pa.1963); In re Stormer's Estate, 123 A.2d 627, 629 (Pa. 1956).  "However, this rule is subject in the first instance to a construction of the contract itself and the determination from its terms as to what was the intention of the parties."  Unit Vending Corp., 190 A.2d at 300.

Oldcastle argues that the obligation of the VPMC Principals under the First Modification Agreement to sell the Shops and use the proceeds to pay off the Loan did not involve the peculiar skills of the VPMC Principals.  Oldcastle adds that it is apparent that VPMC's sale of the Shops did not require the peculiar skills of Anthony Gambone, Sr. and John Gambone, Sr. because it sold the Shops after each of them had died and, thus, the obligations of the deceased VPMC Principals transferred to and became the legal obligation of their respective estates.  (Pl.'s Resp. Mot. to Dismiss at 26-27.)

Here, we agree with Oldcastle that the sale of the Shops did not depend on the "peculiar" skills of either Anthony Gambone, Sr. and/or John Gambone, Sr.  Also, we note that there is nothing in the First Modification Agreement saying what should happen in the event of the death

33

of either or both of them.  In this respect, the contract is ambiguous, and the intentions of the

parties is unclear regarding performance of the First Modification Agreement in the event of

death.  Because the intent of the parties is unclear and Pennsylvania's general contract law holds

that contracts made during a decedent's lifetime are not dissolved by death unless they involve

"peculiar skills or are based on distinctly personal considerations," we decline to dismiss the

executors of the estates of Anthony Gambone, Sr. and John Gambone, Sr.  See Ress, 548 A.2d at

1262.

7.    **Breach of Contract Against VPMC Principals**

   **A. Condition Precedent**

Defendants assert that the conditions precedent to any obligation the VPMC Principals

had to wire money to Oldcastle never occurred before the First Modification lapsed and expired

by its own terms on August 3, 2008, when the Shops were not sold.  In addition, the First

Modification was then superseded by another agreement, the Second Modification, under which

the VPMC Principals had no obligation, conditional or otherwise.  (Defs.' Mot. to Dismiss at

23.)

Defendants argue that the VPMC Principals had a "best efforts" obligation to try and

cause VPMC to sell the Shops by August 3, 2008, and they were only obligated "if" the Shops

were sold by that date and "if" there were net proceeds from the sale, to wire funds to Oldcastle.

Conversely, they argue that if the Shops were not sold by that date (a condition precedent) and/or

there were no proceeds from the sale "on or before August 3, 2008" (a second condition

precedent), then the VPMC Principals were not required to do anything.  (Id. at 24.)

Accordingly, they argue that there is no breach of any contractual duty by the VPMC Principals

under the First Modification Agreement because the condition precedent to performance never accrued.  (Id.)

Pennsylvania contract law provides that "an event mentioned in a contract will not be construed as a condition precedent unless expressly made such a condition."  Wineburgh v. Wineburgh, 816 A.2d 1105, 1109 (Pa. Super. 2002); West Dev. Group, Ltd. v. Horizon Fin., 592 A.2d 72, 76 (Pa. Super. 1991).  Moreover, "[w]hile the parties to a contract need not utilize any particular words to create a condition precedent, an act or event designated in a contract will not be construed as constituting one unless that clearly appears to have been the parties' intention."  Davis v. Gov't Employees Ins. Co., 775 A.2d 871, 874 (Pa. Super. 2001).

In the present action, the language of the First Modification Agreement does not specifically state that the VPMC Principals' obligations to bring about the sale of the Shops and to pay Oldcastle with the funds from the sale were expressly conditioned upon the occurrence of a particular event - here being the sale of the Shops on or before August 3, 2008.  There is a question of whether the obligation continued after this date and continued up until the Shops were sold.  Thus, we decline to interpret this contract language as containing a condition precedent, and find that this issue has no merit.

### B.  Second Modification Agreement

Defendants next claim that the First Modification Agreement was superseded by the Second Modification Agreement.  Defendants state that the VPMC Principals did not sign the Second Modification Agreement, and that it makes the proceeds of the sale of the Property, not the Shops, as the source to repay Oldcastle.  Defendants maintain that Oldcastle acknowledged that after the August 3, 2008 maturity had passed under the First Modification Agreement, on

January 3, 2009, Oldcastle, Ridgewood, and GDC entered into the Second Modification

Agreement where the sale of the Property to the Bucks County School District would be used to

repay Oldcastle.  (Am. Compl. ¶¶ 33- 34.)  Defendants add that the pay-off was no longer even

$1.4 million, but rather, lowered to $1.1 million, and a new maturity date was set as on or before

March 3, 2009.  (Id. ¶ 36.)  Thus, Defendants argue that the "VPMC Principals were no longer

obligated to send any monies to Oldcastle either conditionally, unconditionally and/or

otherwise."  (Defs.' Mot. to Dismiss at 25.)

        In Beach Tree Run, Inc. v. Kates, the district court held that a subsequent contract would

supersede the original contract if its execution would make execution of the original contract

impossible.  No. 99-5993, 2000 WL 1269839, at *6 (E.D. Pa. Sept. 7, 2000); see Contempo

Design, Inc. v. Chicago and Northeast Ill. Dist. Council of Carpenters, 189 F.3d 564, 573 (7th

Cir. 1999) ("[c]ontract law provides that when two parties to a contract sign a subsequent

inconsistent contract regarding the same subject matter, the first contract is superseded and the

attendant duties are discharged."); see also Robert Grace Contracting Co. v. Norfolk & W. Ry.

Co., 102 A. 956, 957 (Pa. 1918) ("The extent to which a new contract supersedes the old depends

upon the nature of the change and the intention of the parties.")  Here, Defendants argue that

under this case law, the Second Modification Agreement is inconsistent with the First

Modification Agreement because it removes the Shops as the source to pay Oldcastle and that

none of the Defendants are parties to the Second Modification Agreement.  Therefore, pursuant

to the express language of the agreements, the Second Modification Agreement controls and

supersedes the First Modification Agreement.

        Oldcastle responds that it does not dispute the general contract law that parties to a

36

contract can rescind a contract by way of executing a new and inconsistent subsequent contract. It, however, maintains that this basic principal is premised on a subsequent contract being between the same parties.  (Pl.'s Resp. Mot. to Dismiss at 20.)  In support, Oldcastle cites to Muchow v. Schaffner, which states that "[a] contract containing a term inconsistent with a term of an earlier contract between the same parties is interpreted as including an agreement to rescind the inconsistent term in the earlier contract."  119 A.2d 568, 570 (Pa. Super. 1956) (citing Section 408 of the Restatement of Contracts).  Oldcastle asserts that the First Modification Agreement and Second Modification Agreement were not executed among the same parties. Oldcastle, Ridgewood, GDC, and the VPMC Principals entered into the First Modification Agreement, whereas Oldcastle, Ridgewood, and GDC entered into the Second Modification Agreement.  Oldcastle, therefore, argues that the principal of rescission does not apply here because the VPMC Principals were not parties to the Second Modification Agreement.  (Pl.'s Resp. Mot. to Dismiss at 21.)

Here, because the VPMC Principals are not parties to the Second Modification Agreement, we do not find that the Second Modification Agreement extinguishes the obligations of the VPMC Principals under the First Modification Agreement.  Thus, we decline to find that the First Modification Agreement was superceded by the Second Modification Agreement.

**8.     Indispensable Parties**

Lastly, Defendants argue that this entire action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(7) because Ridgewood and GDC are indispensable parties to this action.  In reviewing a motion made under Rule 12(b)(7), the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party.

Pittsburgh Logistics Sys., Inc. v. C.R. England, Inc., 669 F. Supp. 2d 613, 618 (W.D. Pa. 2009)

(citing Jurimex Kommerz Transit G.M.B.H. v. Case Corp., 65 Fed. Appx. 803, 805 (3d Cir.

2003)).  To prevail on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(7), Defendants must

show that Oldcastle has failed to join a party under Federal Rule of Civil Procedure 19.  Rule 19

specifies the circumstances in which the joinder of a particular party is compulsory.  Gen.

Refractories Co. v. First State Ins. Co., 500 F.3d 306, 312 (3d Cir. 2007).  Rule 19(a)(1) states:

> A person who is subject to service of process and whose joinder will not
> deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A) in that person's absence, the court cannot accord complete relief among
> existing parties; or (B) that person claims an interest relating to the subject
> of the action and is so situated that disposing of the action in the person's
> absence may: (i) as a practical matter impair or impede the person's ability
> to protect the interest; or (ii) leave an existing party subject to a substantial
> risk of incurring double, multiple, or otherwise inconsistent obligations
> because of the interest.

Fed. R. Civ. P. 19(a)(1).

Under Rule 19(a)(1), a court first asks whether complete relief may be accorded to those

persons named as parties to the action in the absence of the unjoined party.  Janney Montgomery

Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 405 (3d Cir. 1993) (citing Fed. R. Civ. P.

19(a)(1)).  A rule 19(a)(1) inquiry is limited to whether the district court can grant complete relief

to the persons already parties to the action.  Id.  The effect a decision may have on the absent

party is immaterial.  Id. (citing Field v. Volkswagenwerk AG, 626 F.2d 293, 301 (3d Cir. 1980)).

"If the party is indispensable, then the action cannot go forward."[13]  Janney, 11 F.3d at 405.

---

[13]We note that Ridgewood and GDC's joinder in this case is feasible because this joinder would
not deprive this Court of subject matter jurisdiction.  Oldcastle is a corporation organized under the laws
of the State of Washington, with its principal place of business in Washington.  (Am. Compl. ¶ 1.)
Oldcastle avers in its Amended Complaint that Defendants either have their principal places of business
in Pennsylvania or are citizens of Pennsylvania.  In addition, in its initial Complaint, it averred that both

Defendants assert that Oldcastle admitted that Ridgewood and GDC are indispensable parties by suing them in its initial Complaint.  (Defs.' Mot. to Dismiss at 33.)  Defendants assert that Ridgewood and GDC unquestionably have an interest in the claims because Oldcastle cannot possibly succeed against any Defendants unless Oldcastle proves that Ridgewood is in default of the Note and that GDC is in default of the Guaranty.  (Id.)  They further add that Ridgewood and GDC's indispensability is also highlighted in Oldcastle's "Alter Ego" claim in that Oldcastle plead that the VPMC Principals and Michael Gambone are alter egos of VPMC, and non-parties Ridgewood and GDC.  (Am. Compl. ¶¶ 112-113.)  Therefore, Defendants argue that Ridgewood and GDC are "indispensable parties given that this Court is being requested to impose a multi-million dollar debt on each of them, jointly and severally, and make a judicial declaration that would affect all three companies."  (Defs.' Mot. to Dismiss at 33.)

Oldcastle responds that although it admits that Ridgewood and GDC have interests relating to the subject of the action, their abilities to protect such interests are neither impaired or impeded by their absence because these "interests are being litigated in two separate actions in Bucks County in which Oldcastle has obtained judgment by way of confession against Ridgewood and GDC for defaults under the Note and the Guaranty."  (Pl.'s Resp. Mot. to Dismiss at 28.)  Oldcastle argues that the issues of whether Ridgewood was in default of the Note and that GDC was in default of the Guaranty have already been decided, and that has been entered in Oldcastle's favor as to both issues.  Oldcastle further asserts that "counsel for Defendants in this action also represent Ridgewood and GDC in the Bucks County Actions, and

Ridgewood and GDC have their principal places of business at the same address in East Norriton, Pennsylvania.  (Compl. ¶¶ 2-3.)  Defendants do not dispute these averments.  Thus, diversity of citizenship is complete and joinder is feasible.

has been working vigorously to protect the interests of Ridgewood and GDC in the Bucks

County Actions," and, therefore, Ridgewood and GDC are not "required parties" under Rule

19(a)(B)(I).  (Id. at 28.)

On April 12, 2013, this Court ordered counsel for the parties to answer specific questions

posed solely for the purpose of this Court's consideration of the issue of whether Ridgewood and

GDC are indispensable parties to this action.[14]  Specifically, we asked the parties to identify the

officers and principals of Ridgewood, GDC, GAC, and VPMC, Ltd. for the period from

December 5, 2005, through December 2011.  (Doc. No. 14.)  We, also, requested the parties to

describe the business relationship between any and/or all of these parties, and to name any

lawsuits initiated by Oldcastle against Ridgewood, GDC, or any Defendant in this action in the

Bucks County Court of Common Pleas involving the Property including the status of such suits.

(Id.)  The parties both responded on April 26, 2013.  Defendants submitted the names of the

officers, directors, and shareholders of Ridgewood, GDC, GAC, and VPMC, Ltd., and indicated

that all of these entities have certain officers, directors, and shareholders in common.  (Doc. No.

15.)  Defendants also reported that on July 26, 2012, Oldcastle, through its current counsel,

commenced an action in the Bucks County Court of Common Pleas against Ridgewood, GDC,

and all Defendants named in the Amended Complaint (the "July 2012 Litigation").  (Id.)  As

noted, Oldcastle commenced the instant action on November 6, 2012, against these same

Defendants, and on November 7, 2012, Oldcastle, through its current counsel, filed complaints

for confession of judgments in Bucks County against Ridgewood and GDC under separate

---

[14]In ruling on a Rule 12(b)(7) motion, a court may consider "relevant, extra-pleading evidence."
Citizen Band Potawatomi Indian Tribe of OK v. Collier, 17 F.3d 1292, 1293 (10th Cir. 1994); see also
Davis Cos. v. Emerald Casino, Inc., 268 F.3d 477, 479 n.2, 480 n.4 (7th Cir. 2001).

docket numbers (the "Confession Actions").  (Id.)  On November 27, 2012, Oldcastle filed a

Praecipe to Discontinue the July 2012 Litigation, and on December 12, 2012, Ridgewood and

GDC each filed a Petition to Open Confessed Judgment.  (Id.)  These Petitions in Bucks County

are currently pending.

 While Defendants have answered this Court's questions concerning the identities of the

officers and principals of the named entities, Oldcastle responded that it has no independent

knowledge of the identities of the officers and principals of Ridgewood, GDC, GAC, and VPMC,

Ltd. (Doc. No. 16.)  In response to the question of "describe the business relationship between

any and all of these entities," Oldcastle states that it believes that each of these entities comprise

a predominantly family-owned and operated real estate development outfit, and that each of then

shares common ownership.  (Id.)  Oldcastle, however, states that "the ownership structure and

financial organization of these entities is such that [it] cannot and will not have a full

understanding of the precise relationship between these entities until the parties exchange

discovery."  (Id.)

 Because Oldcastle maintains that it currently needs more discovery to understand the

"ownership structure and financial organization" of Ridgewood, GDC, GAC, and VPMC, Ltd.,

we will not decide the issue of whether Ridgewood and GDC are indispensable parties at this

time.  Rather, we will grant Oldcastle more discovery time to obtain such information from

Defendants.  Defendants can renew their Motion to Dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(7) on the grounds that Ridgewood and GDC are indispensable parties after they

have submitted such information in discovery to Oldcastle.

**IV.    CONCLUSION**

In accordance with the above, we deny Defendants' Motion to Dismiss on statutes of limitations ground.  As to Michael Gambone, we grant Defendants' Motion to Dismiss for conversion (Count IV) and civil conspiracy (Count V), and deny the Motion as to fraud (Count I), negligent misrepresentation (Count II), tortious interference with a contractual relationship (Count III), quantum meruit (Count VII), and alter ego/participation (Count VIII).

Regarding the VPMC Principals, we grant the Motion for fraud (Count I), negligent misrepresentation (Count II), conversion (Count IV), civil conspiracy (Count V), and quantum meruit (Count VII).  We deny the Motion as to breach of contract (Count VI), alter ego (Count VIII), and promissory estoppel (Count IX).  The Motion to Dismiss against VPMC, Ltd. on the quantum meruit cause of action (Count VII) is also granted.   Moreover, we deny Defendants' Motion to Dismiss the executor Defendants.

An appropriate Order follows.